**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RACHELLE G.,

                           Plaintiff,                No. 8:17-CV-1102
                                                  (CFH)

v.

COMM'R OF SOC. SEC.,

                           Defendant.

_____

**APPEARANCES:**                            **OF COUNSEL:**

Schneider & Palcsik                  MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, New York 12901
Attorney for Plaintiff

Social Security Administration      KATHRYN S. POLLACK, ESQ.
Office of Regional General Counsel,
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorney for Defendant

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

      Currently before the Court, in this Social Security action filed by Rachelle G.

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 11 and 14.)  For the reasons set forth below, Plaintiff's motion for judgment

on the pleadings is denied and Defendant's motion for judgment on the pleadings is

granted.  The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.[1]

## I. Relevant Background

## A. Factual Background

Plaintiff was born in 1980, making her 33 years old at the alleged onset date and 35 years old at the date of the ALJ's decision.  Plaintiff reported obtaining a bachelor's degree in geography.  Plaintiff has past work as a home attendant (as classified by the vocational expert at the administrative hearing).  At the initial level, Plaintiff alleged disability due to clinical depression (major depressive disorder), avoidant personality, attention deficit hyperactivity disorder ("ADHD"), alcohol dependence, and panic disorder with agoraphobia and social anxiety.

## B. Procedural Background

Plaintiff applied for a period of disability and disability insurance benefits as well as Supplemental Security Income on July 26, 2014, alleging disability beginning January 1, 2014.  Plaintiff's applications were initially denied on September 29 2014, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Brian LeCours on April 6, 2016.  (T. 24-60.)[2]

---

[1] Parties consented to direct review of this matter by a Magistrate Judge pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18.  Dkt. No. 5.

[2] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

On May 24, 2016, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-23.)  On September 8, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

## C. The ALJ's Decision

Generally, in his decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 12-19.)  First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2018.  (T. 12.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date.  (Id.)  Third, the ALJ found that Plaintiff's affective disorder and anxiety disorder are severe impairments.  (T. 12-13.)  Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. 13-15.)  Specifically, the ALJ considered Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders).  (Id.)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations: "the work must consist of unskilled tasks, work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time; and there can be occasional interaction with [the] general public, co-workers, and supervisors[.]"  (T. 15.)  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (T. 17.)  Seventh,

the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (T. 18.) The ALJ therefore concluded that Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

### 1. Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes five arguments in support of her motion for judgment on the pleadings. (Dkt. No. 11, at 21-42 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ failed to provide her with a full and fair hearing and that he failed to fully develop the record. (Id. at 21-23.) Specifically, Plaintiff argues that the ALJ did not recommend she obtain an attorney despite her severe mental illness and, rather, read her right to have an attorney and then allowed her to waive her right to counsel and proceed pro se. (Id. at 23.) Plaintiff also argues that the ALJ failed to fulfill his heightened duty to develop the record by not having Plaintiff's case worker testify at the administrative hearing, obtaining further information from her treating therapist or treating psychiatrist, or asking her to submit invoices/receipts from her online jewelry website. (Id.) Plaintiff additionally contends that the ALJ made erroneous assumptions about her credibility. (Id.)

Second, Plaintiff argues that the ALJ did not give sufficient weight to the findings and opinions of her treating sources. (Pl.'s Mem. of Law at 23-29.) Specifically, Plaintiff argues that the ALJ erred by not discussing the weight he gave to her treating sources. (Id. at 29.) Plaintiff argues that the ALJ further erred by not contacting the

treating sources to seek source statements or to get further information.  (Id.) Plaintiff

also contends that the ALJ only gave some weight to the report of his own examining

psychologist Carly Melcher, Psy.D., and afforded significant weight to the

non-examining consultant M. Marks, assuming that this individual is a doctor without

evidence of his or her credentials in the record.  (Id. at 28-29.)  Plaintiff argues that the

evidence of record from her treating sources establishes she is totally disabled and this

Court should remand for payment of benefits.  (Id. at 29.)

Third, Plaintiff argues that the ALJ erred in concluding she has the RFC to

perform any work despite her severe impairments of depression and anxiety and that

she is disabled under Listings 12.04 and 12.06.  (Pl.'s Mem. of Law at 29-35.)

Specifically, Plaintiff argues that the evidence requires the conclusion that she suffers

from depression and anxiety, has at least three of the four "B" criteria required by the

listings, and may also meet the "C" criteria of Listing 12.04 and/or 12.06.  (Id. at 31-34.)

Within this argument, Plaintiff also contends that the ALJ erroneously gave less weight

to Dr. Melcher's consultative opinion because Plaintiff apparently told her she was not

using marijuana at the time of the consultative examination and that the Commissioner

did not meet her burden at Step Five to show that Plaintiff could perform any work on a

sustained and regular basis.  (Id. at 31, 34.)  Plaintiff again argues that this Court

should remand for payment of benefits as the treating psychiatrists and treating

therapist Terri Morse, LMHC, all noted Plaintiff's severe depression and anxiety as well

as her severe mental limitations.  (Id. at 34-35.)

Fourth, Plaintiff argues that the ALJ erred in rejecting her credibility without

5

sufficient explanation or evidence. (Pl.'s Mem. of Law at 35-42.) Specifically, Plaintiff argues that the ALJ erred in discrediting her testimony because she did not follow her therapist's advice to quit smoking marijuana. (Id. at 39-41.) Plaintiff contends that the ALJ did not determine that this failure to follow treatment recommendations would have allowed her to work or determine that she was disabled because of her marijuana use. (Id. at 41.) Plaintiff also appears to argue that the ALJ erred in stating her treatment had not been congruent with the symptoms alleged and that there had been gaps in her treatment as well as finding that her activities of daily living as shown in the records and her management of her online store suggested greater functioning than reported at the hearing. (Id. at 41-42.)

Finally, Plaintiff argues that the ALJ erred at Step Five by determining she could be a cleaner/housekeeper, bagger, or mail clerk. (Pl.'s Mem. of Law at 42.) Specifically, Plaintiff argues that the vocational expert ("VE") indicated she could not do any work if she was off task over 20 percent of the time or would miss three days of work each month and that the ALJ should have determined that she was disabled using this correct RFC. (Id.)

### 2. Defendant's Motion for Judgment on the Pleadings

Defendant makes five arguments in support of her general argument that the Commissioner's determination that Plaintiff was not disabled during the relevant time period is supported by substantial evidence. (Dkt. No. 14, at 2-25 [Def.'s Mem. of Law].) First, Defendant argues that the ALJ provided Plaintiff with a full and fair hearing

6

and fully developed the record.  (Id. at 5-11.)  Specifically, Defendant argues that the

ALJ fully apprised Plaintiff of her right to obtain an attorney, which she properly waived.

(Id. at 5, 7.)  Defendant also argues that the ALJ explained the hearing process, asked

Plaintiff detailed questions, updated the file with medical records he obtained after

Plaintiff indicated they were missing, and considered the entire medical record including

records from Plaintiff's treating providers and opinions from the non-examining state

agency psychologist and consultative psychologist.  (Id.)  Additionally, Defendant

argues that the ALJ did not err by failing to ask Plaintiff's case worker to testify at the

hearing and that the medical record was adequate for the ALJ to reach a reasoned

conclusion without needing to obtain a medical source statement from Plaintiff's treating

providers.  (Id. at 8-10, 12.)  Defendant further argues that the ALJ did not base his

decision on erroneous assumptions as Plaintiff contends.  (Id. at 10-11.)

Second, Defendant argues that the ALJ properly weighed the medical opinion

evidence.  (Def.'s Mem. of Law at 11-18.)  Specifically, Defendant argues that the ALJ

was entitled to give significant weight to the opinion of non-examining state agency

psychologist M. Marks, Ph.D., and some weight to consultative psychologist Dr.

Melcher.  (Id. at 11, 16-18.)  Defendant also argues that the ALJ properly considered

the treatment records from Plaintiff's providers and correctly applied the legal

standards.  (Id. at 11-14.)  Additionally, Defendant argues that Dr. Marks' opinion

supports the ALJ's decision and that Dr. Marks is identified as a Ph.D. in the record,

contrary to Plaintiff's argument.  (Id. at 15-16.)  Defendant also argues that the ALJ did

not err by failing to allow Plaintiff to cross-examine Dr. Marks because Plaintiff never

made such a request at the hearing and the decision to issue a subpoena is within the discretion of the ALJ. (Id. at 16.)

Third, Defendant argues that the ALJ's Step Three determination and RFC finding are supported by substantial evidence (including the opinions of Dr. Marks and Dr. Melcher, treatment notes from therapist Ms. Morse, and treatment records from Dov Rapoport, M.D.). (Def.'s Mem. of Law at 18-21.) Defendant also argues that neither remand nor reversal is warranted for the ALJ's failure to discuss Global Assessment of Functioning ("GAF") scores. (Id. at 20-21.)

Fourth, Defendant argues that the ALJ properly considered Plaintiff's subjective allegations regarding the intensity, persistence, and limiting effects of her symptoms. (Def.'s Mem. of Law at 21-24.) Specifically, Defendant argues that the ALJ properly evaluated Plaintiff's alleged symptomology in accordance with the regulatory framework and properly considered her wide-ranging activities of daily living. (Id. at 21-23.) Defendant also argues that there is no indication that the ALJ held the fact that Plaintiff smoked marijuana or failed to stop smoking it against her, as Plaintiff contends, and rather noted that Plaintiff did not properly disclose such use to Dr. Melcher as one factor in his assessment of her allegations. (Id. at 23.)

Finally, Defendant argues that the ALJ's Step Five determination is supported by substantial evidence. (Def.'s Mem. of Law at 24-25.) Specifically, Defendant argues that the ALJ included all the limitations found in the RFC in his question to the VE, the RFC is supported by the medical record and Plaintiff's activities, the additional limitation alleged by Plaintiff (that she would be off task over 20 percent of the day) is not

supported by the record, and the ALJ was therefore entitled to rely on the VE's testimony to conclude there was work Plaintiff could perform. (Id.)

## II. Relevant Legal Standard

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is

> listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

### III. Analysis

#### A. Whether the ALJ Properly Developed the Record and Afforded Plaintiff a Full and Fair Hearing

#### 1. A Full and Fair Hearing and Plaintiff's Waiver of Counsel

"A claim of entitlement to social security benefits triggers Due Process Clause protections." Pokluda v. Colvin, No. 13-CV-0335, 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (citing Mathews v. Eldridge, 424 U.S. 319, 332-33 (1976)). Generally, due process requires only that the proceedings in the context of an administrative social security hearing be "full and fair." Id. (citing Richardson, 402 U.S. at 401-02; Echevarria

v. Sec'y of Health & Human Servs., 685 F.2d 751, 755 (2d Cir. 1982)).

"Claimants have a statutory right to notification of their options for obtaining legal representation in [Social Security disability] claims." Grant v. Astrue, No. 05-CV-1138, 2008 WL 2986393, at *4 (N.D.N.Y. July 31, 2008) (citing 42 U.S.C. §§ 406(c), 1383(d)(2)(B)). "At the hearing itself, 'the ALJ must ensure that the [plaintiff] is aware of [her] right [to counsel].'" Sindoni v. Colvin, No. 14-CV-0633, 2015 WL 3901955, at *4 (N.D.N.Y. June 25, 2015) (quoting Robinson v. Sec'y of Health and Human Servs., 733 F.2d 255, 257 (2d Cir. 1984)). Notably, "[t]he Second Circuit rejected the 'enhanced disclosure requirements' established in some circuits." Sindoni, 2015 WL 3901955, at *4 (citing Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508 (2d Cir. 2009)). "Even if an ALJ does not sufficiently inform a plaintiff of his/her rights, the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based." Grant, 2008 WL 2986393, at *5 (citing Alvarez v. Bowen, 704 F. Supp. 49, 53 (S.D.N.Y. 1989)). Rather, "Plaintiff must show prejudice or unfairness in the proceeding." Grant, 2008 WL 2986393, at *5 (citing Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987)). Additionally, "[t]he Commissioner of Social Security is not obligated to provide a claimant with counsel," though where a claimant proceeds pro se, "the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore all relevant facts.'" Lamay, 562 F.3d at 509 (quoting Hankerson v. Harris, 636 F.2d 893, 895 (2d Cir. 1980)).

Plaintiff argues that the ALJ failed to provide her with a full and fair hearing because he did not recommend she obtain an attorney despite her severe mental

illness (instead reading her right to have an attorney and allowing her to waive her right to counsel and proceed pro se) and made erroneous assumptions about her credibility. (Dkt. No. 11, at 21-23 [Pl.'s Mem. of Law].) The Court finds this argument unpersuasive.

First, the Court's review of the administrative hearing transcript does not support Plaintiff's contention that she was not provided a full and fair hearing or did not adequately understand her waiver of counsel. The hearing transcript indicates that the ALJ allowed Plaintiff to bring her case worker Jamie Ganter with her to the hearing and explained that Ms. Ganter was to be there as a moral support person and was not there to participate in any way. (T. 27.) The ALJ carefully proceeded through the hearing process and explained the process to Plaintiff as he did so. The ALJ specifically advised Plaintiff of her right to counsel and offered to adjourn the hearing if she wanted to try to get counsel. (T. 27-28.) She waived her right to counsel and chose to proceed with the hearing. (T. 28-29.) The ALJ further explained the issues of her case and the disability determination process and discussed the exhibits of record. (T. 29-31.) Plaintiff did not object to any of the exhibits. (T. 31.) The ALJ also asked if there were any additional records she wanted to be considered and had her sign a new authorization should he need to request any other records. (T. 31-32.) Finally, after the VE testified, the ALJ asked Plaintiff if she had any questions for the VE and she responded that she did not think so. (T. 58.)

Second, Plaintiff's argument that the ALJ made erroneous assumptions about her credibility (related to her report to the consultative examiner Dr. Melcher that she

was not using marijuana, her treating primary care provider's statement that she was working as a certified nurse's aide even after she could no longer work, or the ALJ's assumption that she was working with her online jewelry website) fails to establish that Plaintiff was not afforded a full and fair hearing.  (Dkt. No. 11, at 23 [Pl.'s Mem. of Law].)   Rather, the ALJ asked Plaintiff specific questions about her past work, her internet work during a period of alleged disability, and her history of substance abuse and ongoing marijuana use as it related to her report to Dr. Melcher.  (T. 33-34, 36-38, 45-48.)  The Court will discuss the ALJ's credibility finding further in Section III.D. of this Decision and Order.

### 2. The ALJ's Duty to Develop the Record

Although the claimant has the general burden of proving that he or she has a disability within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to develop the administrative record'" due to the non-adversarial nature of a hearing on disability benefits.  Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999); citing Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002), Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000)).  "'It is the ALJ's duty to investigate and develop the facts and develop the arguments both for and against the granting of benefits.'"  Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (quoting Lamay, 562 F.3d at 508-09).  An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as

permission is granted to request such reports." Hart v. Comm'r, No. 07-CV-1270, 2010

WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (internal

quotation marks omitted).

"Where there are no obvious gaps in the administrative record, and where the

ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to

seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan,

168 F.3d 72, 79 n. 5 (2d Cir. 1999) (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir.

1996)). Further, there is no obligation to re-contact a treating physician where the

evidence of record is "adequate to permit the ALJ to make a disability determination."

Carvey v. Astrue, 380 F. App'x 50, 53 (2d Cir. 2010) (summary order) (citing Perez, 77

F.3d at 47-48; see also 20 C.F.R. § 404.1520b (indicating that the Commissioner may

re-contact a treating physician "[i]f the evidence is consistent, but we have insufficient

evidence to determine whether you are disabled, or if after weighing the evidence we

determine we cannot reach a conclusion about whether you are disabled").

"When a claimant properly waives his right to counsel and proceeds pro se, the ALJ's

duties are 'heightened.'" Moran, 569 F.3d at 112 (quoting Cruz v. Sullivan, 912 F.2d 8,

11 (2d Cir. 1990)). "The ALJ must 'adequately protect a pro se claimant's rights by

ensuring that all of the relevant facts are sufficiently developed and considered' and by

'scrupulously and conscientiously probing into, inquiring of, and exploring for all the

relevant facts.'" Moran, 569 F.3d at 112 (quoting Cruz, 912 F.2d at 11). "And when a

claimant appears pro se and is otherwise impaired, we must 'make a searching

investigation of the record to make certain that the claimant's rights have been

adequately protected.'" Id.

Plaintiff also argues that the ALJ failed to fulfill his heightened duty to develop the record by not having Plaintiff's case worker testify at the administrative hearing, obtaining further information from her treating therapist or treating psychiatrist, or asking her to submit invoices/receipts from her online jewelry website. (Dkt. No. 11, at 21-23 [Pl.'s Mem. of Law].) The Court finds this argument unpersuasive.

Again, the hearing transcript does not support Plaintiff's argument here. The ALJ allowed Plaintiff to bring her case worker Ms. Ganter as a moral support person and explained that Ms. Ganter was not there to participate in any way. (T. 27.) The ALJ specifically discussed the exhibits of record and Plaintiff did not object to any of the exhibits. (T. 29-31.) The ALJ also asked if there were any additional records she wanted to be considered and had her sign a new authorization should he need to request any other records. (T. 31-32.) Additionally, after the VE testified, the ALJ asked Plaintiff if she had any questions for the VE and she responded that she did not think so. (T. 58.) Further, the record indicates that additional records regarding Plaintiff's January 2016 admission to Albany Medical Center Hospital were requested on April 7, 2016 (the day after the administrative hearing) and the ALJ subsequently proffered Exhibit 10F to Plaintiff and proposed entering it into the record. (T. 252-53, 432-651.) For these reasons, the Court finds that the record indicates that the ALJ fulfilled his heightened duty to develop the record following Plaintiff's waiver of counsel.

For the above reasons, the Court finds that the ALJ properly developed the record and afforded Plaintiff a full and fair hearing. Remand is therefore not required

on these bases.

## B. Whether Substantial Evidence Supports the ALJ's Analysis and Findings Regarding the Listings, the Opinion Evidence, and Plaintiff's RFC

"Plaintiff has the burden of proof at step three to show that her impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009) (citing Naegele v. Barnhart, 433 F. Supp. 2d 319, 324 (W.D.N.Y. 2006)).  "To meet a Listing, Plaintiff must show that her medically determinable impairment satisfies all of the specified criteria in a Listing." Rockwood, 614 F. Supp. 2d at 272 (citing 20 C.F.R. § 404.1525(d)).  "If a claimant's impairment 'manifests only some of those criteria, no matter how severely,' such impairment does not qualify." Rockwood, 614 F. Supp. 2d at 272 (quoting Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  Additionally, a court may be able to uphold an ALJ's finding that a claimant does not meet a Listing even where the decision lacks an express rationale for that finding if the determination is supported by substantial evidence.  See Rockwood, 614 F. Supp. 2d at 273 (citing Berry, 675 F.2d at 468).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess, 537 F.3d at 128).

However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" Greek, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." Blinkovitch v. Comm'r of Soc. Sec., No. 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek, 802 F.3d at 375 (quoting Burgess, 537 F.3d at 129).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant.  20 C.F.R. §§ 416.927(c)(1)-(6).

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting Melville, 198 F.3d at 52).

"In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." Pardee, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" Hendrickson v. Astrue, No. 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. See Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, No. 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).

Here, the ALJ found that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals the severity of a listed impairment and specifically considered Listings 12.04 and 12.06. (T. 13-15.) The ALJ concluded that Plaintiff has mild restriction in activities of daily living, moderate difficulties in social functioning, and moderate difficulties with regard to concentration, persistence or pace, and that she has experienced one to two episodes of decompensation, each of extended duration. (T. 13-14.) The ALJ also found that Plaintiff has the RFC to perform a full range of work at all exertional levels with non-exertional limitations. (T. 15.) In making these findings, the ALJ reviewed the evidence of record including Plaintiff's reports, testimony, and treatment records as well as the consultative opinion evidence including the report of Dr. Melcher and assessment of non-examining consultant Dr. Marks.[3] (T. 12-17, 65-68, 75-78, 354-60.)

Dr. Melcher examined Plaintiff on September 17, 2014, and observed that she had poor eye contact, a coherent and goal-directed thought process, a depressed and tearful affect, a dysthymic mood, intact attention and concentration, mildly impaired recent and remote memory skills due to emotionality, and fair to poor insight and judgment. (T. 356-57.) Dr. Melcher diagnosed posttraumatic stress disorder ("PTSD"), panic disorder, agoraphobia, recurrent major depressive disorder, avoidant personality traits, and the need to rule out ADHD (inattentive type). (T. 358.) She opined that Plaintiff was able to follow and understand simple directions and instructions, perform

---

[3] Plaintiff argues that the ALJ erroneously afforded significant weight to the non-examining consultant M. Marks, assuming that this individual is a doctor without evidence of his or her credentials in the record. (Dkt. No. 11, at 28-29 [Pl.'s Mem. of Law].) However, the Disability Determination and Transmittal notes Dr. Marks as "M MARKS, PHD" with a specialization code of "38," which indicates psychology. (T. 81-82.) See PROGRAM OPERATIONS MANUEL SYSTEM ("POMS") DI 24501.004 "Medical Specialty Codes" (May 5, 2015.)

simple tasks independently, and maintain attention and concentration adequately. (T. 357.) She also opined Plaintiff had mild-to-moderate limitations maintaining a regular schedule and making appropriate decisions as well as moderate limitations learning new tasks, performing complex tasks independently, relating adequately with others, and appropriately dealing with stress. (Id.) Dr. Melcher indicated that these difficulties were caused by PTSD and depressive symptoms and that the results of the examination appeared to be consistent with psychiatric problems which might significantly interfere with Plaintiff's ability to function on a daily basis. (Id.) She also noted Plaintiff would need assistance to manage funds due to reported difficulty and symptoms of impulsivity. (T. 358.) In his decision, the ALJ indicated that he afforded some weight to Dr. Melcher's opinion because she personally examined Plaintiff and her opinion was consistent with the findings during the evaluation. (T. 17.) The ALJ noted that Plaintiff was not entirely forthcoming regarding her substance abuse, rendering Dr. Melcher's opinion less persuasive. (Id.)

On September 25, 2014, Dr. Marks reviewed the record and opined that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence or pace, and one or two repeated episodes of decompensation, each of extended duration. (T. 65-68, 75-78.) Dr. Marks also indicated that Plaintiff's "ability to deal with co-workers and the public would be somewhat reduced, but adequate to handle brief and superficial contact" and "her ability to tolerate and respond appropriately to supervision would be reduced, but adequate to handle ordinary levels of supervision in the customary work setting." (T.

68, 78.)  The ALJ afforded significant weight to Dr. Marks' opinion.  (T. 17.)

Plaintiff argues that the ALJ erred by (a) not discussing the weight he gave to her treating sources, (b) not contacting her treating sources to seek source statements or to get further information, (c) affording only some weight to Dr. Melcher's opinion and significant weight to Dr. Marks' opinion, and (d) concluding she has the RFC to perform any work despite her severe impairments of depression and anxiety.  (Dkt. No. 11, at 23-35 [Pl.'s Mem. of Law].)  Plaintiff also argues she is disabled under Listings 12.04 and 12.06 based on the evidence of record.  (Id. at 29-35.)  The Court finds these arguments unpersuasive for the following reasons.

First, the ALJ indicated that he considered the opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  (T. 15.)  Further, the ALJ's overall decision indicates he adequately considered Plaintiff's alleged impairments and symptoms in relation to the listings and, based on the treatment records and opinion evidence, properly concluded she did not meet or medically equal the requirements of a listed impairment.  (T. 12-17.)  The Court's review of the record does not support Plaintiff's arguments indicating that she is disabled under either Listing 12.04 or 12.06.

Second, the ALJ's analysis of the evidence (including the opinions from Drs. Melcher and Marks) contains sufficient explanation for the findings reached by the ALJ. (T. 15-17.)  Specifically, the ALJ noted that the medical evidence provided some support for Plaintiff's allegations regarding her depression and summarized treatment records documenting a March 2014 psychiatric hospitalization, ongoing mental health

counseling with Ms. Morse, and a January 2016 hospitalization due to increased depression and suicidal ideation. (T. 16, 254-353, 377-431, 435-651.) The ALJ also noted inconsistencies in the medical evidence regarding Plaintiff's substance abuse. (T. 16-17, 320-58.) Further, the ALJ adequately summarized the opinions from Dr. Melcher and Dr. Marks and indicated the specific weight afforded to each opinion. (T. 17.) Additionally, the ALJ was entitled to rely on Dr. Marks' non-examining opinion as a qualified expert in the field of social security disability. Frey, 485 F. App'x at 487; Little, 2015 WL 1399586, at *9. Although Plaintiff argues the ALJ did not adequately discuss the weight afforded to her treating sources, the Court finds that the ALJ did sufficiently summarize and discuss Plaintiff's treatment records throughout the decision. (T. 13-17.)

The Court notes that "[i]t is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such." Bliss v. Colvin, No. 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3, 2015); see also Petell v. Comm'r of Soc. Sec., No. 12-CV-1596, 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); Quinn v. Colvin, 199 F. Supp. 3d 692, 712 (W.D.N.Y. 2016) ("'Although [an] ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'") (quoting Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)); West v. Comm'r of Soc. Sec., No.

15-CV-1042, 2016 WL 6833060, at *5 (N.D.N.Y. Oct. 18, 2016), Report and Recommendation adopted by 2016 WL 6833995 (N.D.N.Y. Nov. 18, 2016) (citing Matta, 508 F. App'x at 56). Further, the Court will not now reweigh the evidence before the ALJ. See Warren v. Comm'r of Soc. Sec., No. 15-CV-1185, 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing . . . . [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), Report and Recommendation adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting Lefford v. McCall, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)); Vincent v. Shalala, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)); Lewis v. Colvin, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015) (noting that it is not the role of a court to "re-weigh evidence" because "a reviewing court 'defers to the Commissioner's resolution of conflicting evidence' where that resolution is supported by substantial evidence) (quoting Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012); citing Lamay, 562 F.3d at 507). The ALJ's overall decision indicates careful consideration of Plaintiff's allegations and the evidence of record.

Finally, the Court finds that the ALJ did not err in failing to recontact Plaintiff's treating sources for statements or further information or in not having Plaintiff's case worker testify at the administrative hearing. The Court agrees that the medical record

was adequate for the ALJ to reach a reasoned conclusion without needing to obtain a medical source statement from Plaintiff's treating providers.  Carvey, 380 F. App'x at 53 (citing Perez, 77 F.3d at 47-48); see also 20 C.F.R. §§ 404.1520b, 416.920b.

For the reasons outlined above, the ALJ's analysis of the Listings and the opinion evidence as well as the resulting RFC are supported by substantial evidence. Remand is therefore not required on these bases.


**C. Whether Substantial Evidence Supports the ALJ's Credibility Determination**

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations.  "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Schlichting v. Astrue, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).  The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that, "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'"  Schlichting, 11 F. Supp. 3d at 206 (quoting Carroll, 705 F.2d at 642; Aponte v. Sec'y, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).  Due to the fact that the

ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is generally entitled to deference.  Weather v. Astrue, 32 F. Supp. 3d 363, 371 (N.D.N.Y. 2012) (citing Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir. 1999)).

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (T. 16.)  Plaintiff argues that the ALJ erred in rejecting her credibility without sufficient explanation or evidence, particularly in relation to his consideration of her treatment, activities of daily living, management of her online jewelry store, and continued marijuana use.  (Dkt. No. 11, at 35-42 [Pl.'s Mem. of Law].)  The Court finds this argument unpersuasive for the following reasons.

First, the ALJ stated in his decision that he considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-4p.  (T. 15.)  Further, the ALJ's overall decision indicates he adequately considered the evidence of record (including Plaintiff's testimony, her medical treatment, and the medical opinions of record) in determining Plaintiff's credibility.  (T. 15-17.)

Second, the ALJ provided sufficient specific reasons for his credibility determination including his indication that Plaintiff's testimony of disabling symptoms and limitations of function were not entirely consistent with the evidentiary record

26

because, while the medical evidence showed there were some limitations of function, they would not preclude all full-time work. (T. 16.) The ALJ further explained that Plaintiff's treatment had not been congruent with the alleged symptoms and limitations and that she had generally been seen biweekly or monthly with gaps in her treatment. (Id.) The ALJ also indicated that Plaintiff's activities of daily living (as reflected in the various treatment records and management of her online jewelry store) suggested greater functioning than Plaintiff reported at the hearing. (T. 16, 320-53, 377-424.)

Finally, the ALJ noted that there were inconsistencies in the medical evidence of Plaintiff's substance abuse including her failure to accurately disclose her marijuana and occasional alcohol use to consultative examiner Dr. Melcher as she had reported to her counselor Ms. Morse. (T. 16-17, 320-58.) The Court's review of the record indicates that the ALJ's observation regarding the possibility Plaintiff was not entirely forthcoming about her substance abuse was not unreasonable. (T. 16-17.) Dr. Melcher's September 2014 examination did indicate that Plaintiff reported she did not currently use drugs or alcohol while her mental health treatment records between April 2014 and October 2015 indicate she was using marijuana. (T. 334-35, 338, 340, 342-43, 348, 350, 352, 355, 380, 387, 394, 396.)

For the reasons above, the Court finds that the ALJ's credibility determination is supported by substantial evidence. Remand is therefore not required on this basis.


### D. Whether Substantial Evidence Supports the ALJ's Step Five Finding

Although the claimant has the general burden to prove he has a disability under

the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" McIntyre, 758 F.3d at 150 (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical [question] as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion' [and]. . . [the hypothetical question] accurately reflect[s] the limitations and capabilities of the claimant involved." McIntyre, 758 F.3d at 151 (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983); citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)). "If a hypothetical question does not include all of a claimant's impairments, limitations, and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a conclusion of no disability." Pardee, 631 F. Supp. 2d at 211 (citing Melligan v. Chater, No. 94-CV-0944, 1996 WL 1015417, at *8 (W.D.N.Y. Nov. 14, 1996)).

After determining the RFC, the ALJ found that Plaintiff is unable to perform past relevant work based on the VE testimony. (T. 17, 55-58.) The ALJ then found that Plaintiff could perform other jobs existing in significant numbers in the national economy including cleaner/housekeeping, bagger, and mail clerk, again based on the VE testimony. (T. 18, 55-58.)

Plaintiff argues that the ALJ erred at Step Five by determining she could be a cleaner/housekeeper, bagger, or mail clerk because the VE indicated Plaintiff could not do any work if she was off task over 20 percent of the time or would miss three days of

work each month and that the ALJ should have determined that she was disabled using this correct RFC.  (Dkt. No. 11, at 42 [Pl.'s Mem. of Law].)  However, as discussed in Section III.B. of this Decision and Order, the Court finds that substantial evidence supports the ALJ's analysis of Plaintiff's RFC and the inherent finding that no limitations regarding off-task time or absences were warranted.

Therefore, the Court finds that the ALJ's Step Five finding is supported by substantial evidence.  Remand is not required on this basis.

## IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: January 9, 2019
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge